UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOUNLAY PHOMMAVONGSA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>Respondents. | Case No.  1:25-cv-01852-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION<br><br>(Doc. 6)<br><br>**14-DAY OBJECTION PERIOD** |

Pending before the Court is Petitioner Bounlay Phommavonsga's ("Petitioner") motion for preliminary injunction,[1] filed on December 18, 2025.  (Doc. 6).  On December 19, 2025, Respondents were ordered to show cause in writing why the Court should not grant Petitioner's motion for preliminary injunction.[2] (Doc. 8).  On December 29, 2025, Respondents filed a response

---

[1] On December 19, 2025, the presiding district judge referred the pending motion for preliminary injunction to the undersigned for the preparation of findings and recommendations or other appropriate action considering the existing briefing schedule on the merits of the petition. (Doc. 7); *see* (Doc. 5).

[2] The Court ordered that any response by Respondents shall provide the Court with copies of referenced/relevant portions of Petitioner's A-File if not already filed and other supporting documents, including available documentation related to any asserted violations of release conditions. (Doc. 8).  Respondents were ordered to specifically address why the facts suggest a change in circumstance material to the issue of whether Petitioner is a danger to public safety or a flight risk. *Id.* (citing, *e.g.*, *Chavarria v. Chestnut*, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *4 (E.D. Cal. Dec. 9, 2025); *Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL

1

to the Court's order to show cause regarding both Petitioner's pending motion for preliminary injunction and petition. (Doc. 11). On December 31, 2025, Petitioner filed a reply in support of his motion and petition. (Doc. 12). For the reasons set forth herein, the undersigned recommends that Petitioner's motion for preliminary injunction be granted.[3]

## I.   Relevant Background

### A.   Procedural History

Petitioner, a federal detainee proceeding by counsel, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on December 14, 2025, while in custody of the Immigration and Customs Enforcement ("ICE") at the California City Detention Facility, located in Kern County, California. (Doc. 1 at 1). Following the Court's preliminary assessment that Petitioner's petition may be cognizable under 28 U.S.C. § 2241, on December 17, 2025, the Court set a briefing schedule on the merits of the petition. (Doc. 5).

### B.   Factual Background[4]

Petitioner, a 50-year-old man from Laos, entered the United States as a refugee child in 1979, was granted lawful permanent resident ("LPR") status in 1980, and has lived in the United States for over 45 years with his family. (Doc. 1 at 1, 4-5). In November 2006, an immigration judge entered a final order of removal against Petitioner, ordering him removed to Laos, based on a then-approximately four-year old qualifying criminal conviction.[5] *Id.* at 5. Petitioner had no

3281422, at \*6 (N.D. Cal. Nov. 25, 2025)).

[3] Because neither Petitioner nor Respondents request a hearing on the motion, the motion is submitted for decision without oral argument. Local Rule 230(g); *see generally* (Docs. 6, 11, 12).

[4] The factual background is drawn from Petitioner's petition (Doc. 1), his motion for preliminary injunction (Doc. 6), and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

[5] On December 9, 2002, Petitioner was convicted of violation of California Penal Code ("CPC") § 459 for first-degree burglary and CPC 186.22(a) for street gang membership and was sentenced to four years and eight months imprisonment, respectively. (Doc. 11-1, Declaration of Deportation Officer Samuel Medina, Jr. ("Medina Decl.") ¶ 7). On November 8, 2006, ICE arrested Petitioner and personally served him with a Form I-862 notice to appear ("NTA") charging him as

2

ongoing criminal issues by the time of his removal proceedings. *Id.* Following entry of the removal order, ICE took Petitioner into custody around November 2006. *Id.*

Petitioner was held in custody until he was released under an Order of Supervision on March 2, 2007,[6] after the government was unable to obtain travel documents from Laos to effectuate Petitioner's removal thereto.[7] *Id.* When he was released, and for the next 18 years until 2025, Petitioner remained out of custody, supported his family, was gainfully employed, and built his life in the community while fully complying with all supervision requirements, including periodic ICE check-ins, updating his address and contact information, and obeying all laws. *Id.* at 5-6.

On June 12, 2025, ICE re-detained Petitioner at his most recent check-in appointment and later transported him to the California City Detention Center, where he remains incarcerated indefinitely with no timeline for actual removal.[8] *Id.* at 6-7, 8.

On September 10, 2025, an immigration judge granted Petitioner's motion to reopen and issued an emergency stay of removal, making Petitioner's prior removal order no longer administratively final. *Id.* at 9 (citing Doc. 1-3, Exhibit 1 ("Ex. 1")) (September 10, 2025, Order of the Immigration Judge in *Matter of Bounlay Phommavonsga* (A023-837-353) granting motion

---

an alien who is removable from the United States for having been convicted of a burglary offense aggravated felony for which a term of imprisonment of at least one year was imposed under the Immigration and Nationality Act ("INA") § 237(a)(2)(iii). *Id.* ¶ 8. Petitioner later pled to charges on the NTA and the immigration judge sustained the factual allegations and the charge of removability and designated Laos as the country of removal should removal become necessary. *Id.* ¶ 9. On November 30, 2006, Petitioner appeared in immigration Court and was ordered removed to Laos, and Petitioner waived appeal. *Id.* ¶ 10.

[6] Respondents' evidence indicates Petitioner was released from custody and commenced ICE supervision on March 8, 2007 (not March 2, 2007). Medina Decl. ¶ 12.

[7] Petitioner alleges that ICE released him and acknowledged that his continued detention had become unreasonable and unjustified absent a realistic prospect of removal. (Doc. 1 at 5-6). Petitioner alleges that critical impediments prevented the execution of his removal, including the lack of a repatriation agreement between Laos and the United States, and Laos's historic non-cooperation with U.S. deportation efforts. *Id.*

[8] DO Medina declares that Petitioner was detained at the Mesa Verde ICE Processing Facility in Bakersfield, California from June 12, 2025, until September 5, 2025, when he was transferred to California City Detention Facility. Medina Decl. ¶¶ 13, 17. He declares that on July 30, 2025, Laos issued travel documents for Petitioner, and that August 2025, ICE attempted, but was unable to facilitate, Petitioner's return to Laos via air. *Id.* ¶¶ 13, 15.

to reopen and issuing an emergency stay of removal).

On December 16, 2025, DHS filed a pending motion to change venue to Adelanto immigration court. Medina Decl. ¶ 22. The government intends to file a Form I-261 Additional Charges of Inadmissibility/Deportability charging Petitioner as removable under INA § 237(a)(2)(B) if the immigration judge grants the motion to change venue. *Id.* Petitioner's next immigration court hearing is pending scheduling by the immigration court. *Id.* ¶ 23.

## II.    **Governing Authority**[9]

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter*, 555 U.S. at 20); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

Preliminary injunctions are intended "merely to preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward."

---

[9] The Court has jurisdiction over Petitioner's claim that he is improperly detained, pursuant to 28 U.S.C. § 2241. *See* (Docs. 1, 5). In opposing issuance of a preliminary injunction, Respondents do not challenge the Court's jurisdiction over this claim. *See generally* (Doc. 11).

4

*Lackey v Stinnie*, 604 U.S. 192, 200 (2025) (citations and quotations omitted). "The status quo refers to 'the last uncontested status which preceded the pending controversy.'" *E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185, at *8 (E.D. Cal. Nov. 25, 2025) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

**III.     Parties' Contentions**

Petitioner moves for a preliminary injunction ordering his immediate release from ICE custody and enjoining the Department of Homeland Security ("DHS") from removing him from the United States while his habeas petition is pending. (Doc. 6 at 1).  He contends that this relief is necessary to prevent ongoing irreparable harm from his harmful and prolonged detention for over six months since June 12, 2025, despite an immigration judge reopening and entering a stay of his removal proceedings.  *Id.*  Petitioner asserts that his continued detention serves no legitimate purpose because it is unlikely he will be removed to Laos in the reasonably foreseeable future given Laos's refusal to issue travel documents for his repatriation, and ICE has not provided Petitioner a bond hearing or other procedural safeguards that would apply under INA § 236, the pre-removal detention statute which he contends governs his custody.  *Id.* at 2.  Petitioner argues that he meets the criteria for preliminary injunctive relief as he is likely to succeed on the merits of his petition. *Id.*  He contends that ICE's authority to detain him under INA § 241 ceased once his removal order was stayed and reopened, and in any event his indefinite detention without a realistic prospect of removal violates the limits set by *Zadvydas v. Davis*, 533 U.S. 678 (2001) and its progeny.  *Id.* Petitioner contends that he is suffering irreparable harm each day he remains unlawfully detained, losing his liberty, and separated from his family in violation of his constitutional rights.  *Id.* Petitioner argues that the balance of equities strongly favor him as his harm greatly outweighs any interest the government has in his detention when removal cannot be effectuated in the near future. *Id.*  He argues that the public interest is served by preventing unlawful detention, especially here where Petitioner is a long-time lawful resident with deep community ties and a record of compliance on supervised release.  *Id.*

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) as an alien who is deportable by reason of having committed a qualifying offense covered

5

in 8 U.S.C. § 1227(a)(2)(B), and that the Court should dismiss Petitioner's petition. (Doc. 11 at 1). Respondents argue that upon Petitioner's re-detention on June 12, 2025, his detention was mandatory under 8 U.S.C. § 1231 pursuant to a final order of removal. *Id.* at 2. Respondents assert that though Petitioner is correct that, upon the reopening of an immigration case, that order serves to revoke the final order of removal and thereby change the detention status to discretionary under 8 U.S.C. § 1226(a), here, upon the reopening of his immigration case, Petitioner's qualifying criminal conviction makes him subject to mandatory detention under § 1226(c) rather than under § 1231. *Id.* at 2-3. Respondents concede in response to the Court's minute order (Doc. 8) that the government has no knowledge of any facts suggesting a change in circumstances that is material to the issue of whether Petitioner is a danger to public safety or a flight risk. *Id.*

Petitioner argues in reply that Respondents' opposition does not cure the defect in the government's revocation of his longstanding Order of Supervision and Petitioner's re-detention based on a claim of "imminent removal" that DHS's record does not support. (Doc. 12 at 1). Petitioner contends that the June 12, 2025, Notice of Revocation of Release served on him does not allege any violation of supervision conditions and instead invokes "changed circumstances" and asserts that "ICE is in possession of a travel document to effect [his] imminent removal[.]" *Id.* Petitioner argues that the discrepancy in the government's misrepresentation is not immaterial as it shows DHS cannot justify Petitioner's re-detention and the deprivation of his liberty. *Id.* at 2.

**Discussion**

    **A.**    **Exhaustion**

        1.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been

exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### 2.    Analysis

Petitioner contends in his petition that to the extent any administrative remedies are deemed to apply, he has either exhausted them or exhaustion should be excused.  (Doc. 1 at 3 ¶ 3).  He asserts that ICE has already conducted the initial 90-day post-order custody review and informed Petitioner that his detention would continue.  *Id.*  He contends that because he remains detained with no realistic prospect of removal and because further administrative review would not alter the legal impossibility of his removal to Laos, any additional administrative remedies are either exhausted or futile, and any further administrative delay would be futile and only prolong his unlawful detention.  *Id.*

Respondents do not address exhaustion of administrative remedies in their response to the OSC.  *See* (Doc. 11).

The undersigned finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means.  Specifically, because Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B) as an alien who is deportable by reason of having committed a qualifying criminal offense under § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D), of Title 8, (*see* Doc. 11 at 2-3), and Petitioner must remain incarcerated under that framework without individualized process while the government

seeks to litigate removal proceedings in immigration court, (*see* Medina Decl. ¶¶ 18, 21-23), and it does not appear likely that Petitioner's removal to Laos is imminent, Petitioner therefore lacks recourse statutory or administrative means. *Avilez v. Garland*, 69 F.4th 525, 533-34 (9th Cir. 2023) (*citing Jennings v. Rodriguez*, 583 U.S. 281, 303, 305-06 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes" and "§ 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'")); *see Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'") (quoting *Laing*, 370 F.3d at 1000); *Chavez v. Noem*, -- F. Supp. 3d. --, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility.  Because Petitioners need to show only one of the Laing factors applies, … the Court need not address the other factors.") (internal citation omitted).

Further, Petitioner has demonstrated irreparable harm.  He has been detained for over six months since June 12, 2025, and not has received a bond hearing despite the government conceding that it "has no knowledge of any facts suggesting a change in circumstances that is material to the danger to public safety or flight risk" of Petitioner to justify his re-detention.  Therefore, and because Respondents do not object to and do not otherwise address Petitioner's arguments that exhaustion should be waived for futility and on grounds that continued detention causes him irreparable harm, waiver of the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief is appropriate. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1254-55 (W.D. Wash. 2025) (waiving exhaustion requirement); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) (same); *Cortez v. Sessions*, 318 F. Supp. 1134, 1138-39 (N.D. Cal. 2018) (same); *Carmelo Beltran v. Kristi Noem*, No. 25cv2650-LL-DEB, 2025 WL 3078837, at *4 (S.D. Cal. Nov. 4, 2025) (same); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7, n.9 (E.D. Cal. Oct. 27, 2025) (same); *Kuzmenko v. Phillips*, No. 25-cv-00663-DJC-

AC, 2025 WL 779743, at *4 (E.D. Cal. Mar. 10, 2025) (same)).

**B.    Likelihood of Success on the Merits**

1.    Relevant Statutory Detention Authority

Respondents maintain that Petitioner is "subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B)." (Doc. 11 at 2-3). This Court previously condensed the holdings of the key Supreme Court and Ninth Circuit rulings applicable here, and the undersigned adopts that analysis herein (*see Kakkar v. Chestnut*, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *4-5 (E.D. Cal. Dec. 15, 2025)):

Under 8 U.S.C. § 1226(a)(2), DHS "may continue to detain" or "may release the alien" on bond or conditional parole, "pending a decision on whether the alien is to be removed from the United States." Such conditional release, however, may be revoked by DHS "at any time." 8 U.S.C. § 1226(b). The Board of Immigration Appeals ("BIA") has placed the following limitation on this authority: "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981).

Alternatively, under Section 1226(c), DHS "shall take into custody any alien who is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii) of this title." 8 U.S.C. § 1226(c). This includes any "alien who is convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Under this provision, non-citizens may be released "only if the Attorney General decides ... that release ... is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation ... and the alien will not pose a danger to the safety of other[s] ... and is likely to appear for any scheduled proceeding." *Id.* at § 1226(c)(4). Thus, noncitizens detained under this category are not entitled to bond hearings as those detained under § 1226(a) are. *See Jennings v. Rodriguez*, 583 U.S. 281, 303–304 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions.") (emphasis in original).

Section 1226(c)'s mandatory detention requirement applies even if the government does not immediately detain a criminal non-citizen upon immediate release from a correctional facility. *See Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (finding that the Ninth Circuit's interpretation—namely, that criminal aliens not arrested immediately upon release from criminal custody are exempt from § 1226(c)'s mandatory detention and thus entitled to a bond hearing—is wrong). However, the Supreme Court expressly noted that its decision, "on the meaning of that statutory provision[,] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute." *Id*. at 420. Courts routinely review as-

applied constitutional challenges to § 1226(c) detention. *See e.g., Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 WL 2744397, at *5 (N.D. Cal. March 31, 2023); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025).

As Respondents correctly note, § 1226(c) also authorizes immigration authorities to take into custody noncitizens deportable by reason of having committed any offense covered in § 1227(a)(2)(B). *See* (Doc. 11 at 3). This includes any noncitizen who (1) is convicted at "any time after admission of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance …, other than a single offense involving possession for one's own use of 30 grams or less of marijuana[,]" or (2) any noncitizen "who is, or at any time after admission has been, a drug user or addict[.]" 8 U.S.C. § 1227(a)(2)(B)(i)&(ii). Because Respondents show that Petitioner is subject to mandatory detention under § 1226(c) based on his conviction of violation of California Health and Safety Code § 11370.1(A) for possession of a controlled substance while armed, (*see* Medina Decl. ¶ 6), under the statutory framework above, Petitioner is subject to § 1226(c)(4)'s release provision and therefore is not entitled to bond hearings in the same fashion as those detained under § 1226(a).

Notwithstanding the undersigned's finding that Petitioner is subject to mandatory detention under § 1226(c), here, Petitioner raises a due process argument that his detention under § 1226(c) "is being *applied* in an unconstitutional manner by maintaining prolonged detention without the process due in this posture[,]" *e.g.*, a bond hearing. *See* (Doc. 6 at 9) (emphasis added). As explained in the statutory scheme above, *Preap* "does not foreclose as-applied challenges … to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298 at *5.

Therefore, the undersigned considers Petitioner's as-applied challenge to his re-detention raised in his due process claim. *See* (Doc. 1 at 16-22).

        2.     Due Process

        a.     *Governing Authority*

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995

F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

### b.   Liberty Interest and Mathews Factor Test

The issue here is whether Petitioner has shown a likelihood of success on the merits of his

11

due process claim that he is entitled to immediate release under appropriate supervision and for enjoinment of further unlawful detention unless there is a material change in his removal situation or other circumstances that would justify his detention. *See* (Doc. 1 at 22-23). On Petitioner's as-applied challenge, the Court considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Here, Petitioner shows that, under due procedural due process, he has an underlying, continuing liberty interest from re-detention. Specifically, Petitioner was released on an Order of Supervision in March 2007. (Doc. 1 at 5); *see* Medina Decl. ¶ 12. The decision to release Petitioner appears to be a tacit acceptance that Petitioner was not a flight risk nor a danger to the community. Petitioner remained released from immigration detention for a significant amount of time—over 18 years—while supporting his family, building a life in the community, and without violating the terms of his supervised release. *Id.* at 5-6. Indeed, Respondents do not assert that Petitioner failed to comply with the conditions of his release, nor do they have any facts to suggest Petitioner is a danger to the public or a flight risk. *See* (Doc. 11).

The undersigned agrees with other courts and other judges of this Court that noncitizens released from immigration custody on general orders of supervision (like Petitioner here) have a liberty interest in their freedom that implicates protections under principles of procedural due process. *See Kakkar*, 2025 WL 3638298 at *5 (discussing, *inter alia*, *Perera*, which "involv[ed] a legal permanent resident, convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021" but "successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)" and succeeded in "raising [an] as-applied due process challenge[] to [his] detention without a bond hearing[.]"); *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *see id.* ("[E]ven if

12

immigration detainees must wait months before a periodic re-review of their detention, those already released on immigration bond possess an interest in their continued liberty, which grows over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020).  Accord *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1099 (E.D. Cal. 2025) (considering in connection with a petitioner's procedural due process claim that "[t]he lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty"); *Ramazan M. v. Tonya Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute"). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Because Petitioner has shown he has a protected liberty interest to remain free from re-detention based on his supervised release, the undersigned must determine what process is due before the government may terminate that liberty interest.  To determine this, the undersigned considers the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context), at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention.  He has been out of immigration custody for over 18 years, and during

13

that time, has supported his family, maintained gainful employment, built his life in the community, and has complied with all obligations of his supervised release, including periodic ICE check-ins, and updating his address and contact information. Petitioner's continued liberty interest in remaining on release is undermined by his re-detention without a bond hearing. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause…. The lengthy duration of his conditional release [for over five years] as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination. *Id.* at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Because there were no procedural safeguards to determine if Petitioner's re-detention was justified, ICE has already conducted the initial 90-day post-order custody review and informed Petitioner that his detention would continue (*see* Doc. 1 at 3), and Respondents concede there are no facts indicating any change in circumstances while Petitioner was on release sufficient to justify Petitioner's re-detention, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6. Therefore, this factor weighs in favor of granting a bond hearing.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see also Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost to provide

14

Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing.

In sum, the undersigned finds that, under *Mathews*, Petitioner demonstrates a likelihood of success on the merits of his claims asserting violations of his procedural due process rights.

### C.    Irreparable Harm

The Court now turns to the second *Winter* factor. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

Petitioner contends that absent a preliminary injunction, he will continue to suffer irreparable injury each day he remains unlawfully detained and the attendant injuries to his constitutional and statutory rights and well-being. (Doc. 6 at 17-18). The Court agrees. As noted above, Petitioner shows that he is likely to succeed on the merits of his claim that his detention violates procedural due process. Therefore, Petitioner faces irreparable harm absent a preliminary injunction. This *Winter* factor weighs in favor of preliminary injunctive relief.

### D.    Balance of Equities and Public Interest

"When … the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020) (per curiam)).

Here, Respondents do not address the balance of the equities and public interest factors. *See* (Doc. 11). Thus, Respondents fail to show that any harm they face here is more than minimal, and do not identify any material burden they would experience from issuance of the requested injunction. Therefore, the Court has "'little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor.'" *See Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713

15

F.2d 1432, 1437 (9th Cir. 1983)).

Additionally, the Court finds that the public interest also weighs in Petitioner's favor. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (citation omitted); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.") (citations omitted). "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)).

Therefore, these *Winter* factors weigh in favor of granting preliminary injunctive relief.

**E.      Remedy**

Based on the foregoing, the undersigned finds that Petitioner has met the requirements to issue a preliminary injunction. Petitioner shows a likelihood of success regarding his due process claim sufficient to warrant his release ICE custody unless there is a material change in his removal situation or other circumstances would justify his lawful re-detention under § 1226(c). As Respondents do not provide any other basis to detain Petitioner and concede there are no facts suggesting Petitioner is any risk of flight or danger to the community, the appropriate remedy is Petitioner's immediate release.

Further, the undersigned will recommend the government from re-arresting and detaining Petitioner for more than 14 days without a bond hearing before a neutral arbiter at which the government bears the burden of justifying Petitioner's re-detention by clear and convincing evidence that he is a flight risk or danger to the community or that there is a material change in his removal situation that would justify his re-detention under the law.

**IV.      Conclusion and Recommendation**

Accordingly, IT IS RECOMMENDED that:

1.  Petitioner's motion for preliminary injunction (Doc. 6) be GRANTED;

2. Respondents be ORDERED to release Petitioner immediately;

3. Respondents be ENJOINED from re-detaining Petitioner for more than 14 days without a bond hearing before a neutral arbiter at which the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community or that there is a material change in his removal situation such that physical custody is legally justified; and

4. The parties be ordered to file, no later than 14 days from any adoption of these Findings and Recommendations, a joint status report as to Petitioner's status and address therein whether a further briefing schedule need be set to address the petition on the merits.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **January 15, 2026**                    _____

UNITED STATES MAGISTRATE JUDGE